6   615
28   397

## NELSON HODGES *v.* THE STATE.

1. ARREST. — A peace-officer is authorized, without warrant, to arrest for the illegally carrying of a deadly weapon, and to disarm the arrested party of the unlawful weapon.

2. ASSAULT WITH INTENT TO MURDER. — In a trial for assault with intent to murder, it was not error to allow the State to prove that the person assaulted was a peace-officer, and, when assaulted, was in the act of arrest-

ing the defendant, although the indictment did not allege those facts.   Nor did such proof make it incumbent on the court to instruct the jury on the law of arrests.

3. CHARGE OF THE COURT. — In a trial for assault with intent to murder, the court below gave in charge the reasonable doubt with reference to that offence, but not with reference to minor degrees of assaults.   The defendant was convicted of assault with intent to murder.   *Held*, that the omission in respect to the minor grades was not error to his prejudice.

4. NEW TRIAL. — The provision of the Code which allows a verdict to be impugned by affidavits of jurors was not intended to open up for discussion the respective opinions of the jurors.   This mode of assailing verdicts should never be allowed except as a last resort, and then only to the end of procuring a fair and impartial verdict.

APPEAL from the District Court of Gonzales.    Tried below before the Hon. E. LEWIS.

The evidence in this trial is the same as that adduced on a former trial, reported on page 470 of volume 3 of these reports.

*Ponton & Fly*, for the appellant.    1. In support of our first assignment of errors we would refer the court to the statement of facts, where it will be seen that it was shown, as we think, that the deed was done under the influence of sudden passion, or fear; and it was proper that the judge should have clearly defined the term " sudden passion." It is the duty of the court to charge all the law applicable to every legitimate deduction which the jury may draw from the facts.    *Johnson* v. *The State*, 27 Texas, 766; *Maria* v. *The State*, 28 Texas, 711.

2. This court has decided, not only in this identical case on a former appeal, but in numerous others, that it is necessary in all cases where malice is the prime ingredient, as in an assault with intent to murder, that the court should define the term " malice."    The court below, in the charge, *attempts* to give a definition; and then, as if determined to obliterate the definition, informs the jury that " it does not matter what ingredients constitute malice, or what its

essence may be; whatever it may be, it is to be implied in all cases of homicide," etc., etc.   If it is necessary to give the definition, we contend that it should be given correctly, and that its force with the jury should not be destroyed by telling them that it is of no importance what it may mean. *Ewing* v. *The State*, 4 Texas Ct. App. 417 ; *Hodges* v. *The State*, 3 Texas Ct. App. 470, and authorities cited.

3   The court in no part of the charge attempts to define justifiable homicide, and does not give the law of self-defence, whether of person or property, as we hold the state of facts in this case demands.   Does the charge give all the law applicable to the facts?

4. The special charge asked in this case was almost a literal copy of the opinion of the Court of Appeals delivered in the case of *Johnson* v. *The State*, 5 Texas Ct. App. 43.

5. We take the position that it was error in the court to admit proof that the party alleged to have been assaulted was an officer, and was attempting to take defendant's pistol.   There is no such allegation in the indictment, and we take it that it would have no bearing in the case.   There is nothing plainer in the law than that the *allegata* and *probata* must correspond.   See 4 Texas Ct. App. 156.

6. After such testimony was admitted, and after it had gone to the jury in a manner clearly calculated to prejudice the case of the defendant, it was most certainly the duty of the court to instruct the jury as to the law of arrests, and how far a man would be justified in resisting an illegal arrest.   In *Johnson* v. *The State*, *supra*, the court says : " It is a well-established rule of the common law that when persons have authority to make arrests, and are resisted and killed in the proper exercise of such authority, the homicide is murder in all who take part in such resistance ; and it is equally as well settled that when the arrest is illegal, the offence is manslaughter."   The principle above enunciated is an old and well-established one.   See *Good-*

*man* v. *The State*, 4 Texas Ct. App. 349; 18 Am. Rep. 601; *The Commonwealth* v. *Drew*, 4 Mass. 391; Hor. & Thomp. on Self-Defence, 705 *et seq.*

Was not the legality or illegality of the attempt to take the pistol of the defendant a material question in determining the character and quality of the assault? Can the idea be entertained for a moment that, had there been no proof of King being a peace-officer, and being engaged in trying to capture defendant's pistol at the time of the assault, that any American jury would have convicted the defendant of an assault to murder?

The proof shows that Nelson Hodges and several other negro boys were riding along the public highway, when they were halted by two men, one armed with a repeating-rifle and the other with a pistol; that one of the men, with his pistol in his hand, caught the horse of defendant by the bridle-reins; that defendant tried, time and again, to release himself from this man, who was demanding his pistol, but he was unable to do so; that one of these white men was in front of the defendant, the other behind him. Who will pretend to say that his mind was calm and sedate, or that he did not have adequate cause to produce in him sudden fear or passion?

If the fact that King was an officer had never been before them, the jury would never have dreamed of finding defendant guilty. To the average juror there is an atmosphere of sanctity which floats about the person of a peace-officer, and they look with holy horror upon any resistance to him, no matter how flagrant his acts. We take it, then, that nothing but an imbecile would argue for a moment that a citizen would not be justifiable in resisting an attempted appropriation of his property,—whether pistol or money,— or an attack upon his person by any private individual, at the silent hour of midnight. Then, if our reasoning be correct, the defendant must have been convicted under the view that a petty constable can commit any kind of deviltry

.upon a man, upon the public road, and he dare not resist it. If this be true, then how important that the jury should have been instructed on these points.

7. The court should have charged reasonable doubt under every head of assault.

*Thomas Ball*, Assistant Attorney-General, for the State, citing *Hodges* v. *The State*, 3 Texas Ct. App. 470.

WINKLER, J. This appeal is from a judgment of conviction against the appellant, of an assault with intent to murder one John M. King, alleged to have been committed in Gonzales County, February 1, 1877.

The first three grounds of error assigned relate to the charge of the court as given to the jury, and in refusing to give certain special charges asked by the defendant's counsel. As to the general charge, which relates to the grade of offence of which the defendant was convicted, we deem it only necessary to say that it is sufficient to apprise the jury as to what state of facts would, under the law, have been murder, had death ensued.

When this case was before the court on a former appeal, the judgment was reversed, on the ground (1) that the court failed, in giving the definition of murder, to explain to the jury the meaning of the term "malice;" and (2) it failed to instruct the jury what verdict the jury should render in case they should find that, if death had resulted from the assault, the killing would not have been murder, but manslaughter. 3 Texas Ct. App. 470. These defects in the former charge have been supplied in the present case, in language sufficiently intelligible to be understood by the jury, and in a manner not calculated to mislead.

With reference to the special instructions asked by counsel for the defendant, it may be proper to say that they contain several correct propositions of law. One is as to the various circumstances under which peace-officers are by

law authorized to arrest without warrants; second, that no citizen can be deprived of his liberty except by due course of the law of the land; third, if an officer attempt an unlawful arrest, and is killed, the offence would be manslaughter; and, fourth, in such a case, death not having resulted, the defendant would only be guilty of an aggravated assault. The theory of these instructions, and much of the ingenious argument of counsel, seems to be based upon the idea that it was unlawful for a peace-officer to arrest one having about him a pistol, without a proper warrant for the arrest. The judge, in giving his reasons for refusing to give the special instructions, among others gives the following: "I do not think the court intended to convey the idea that an officer could not lawfully arrest a person having a pistol, without a warrant; and, because I have charged the law of self-defence, and, as I think, applicable to the testimony, without reference to the authority of King as an officer, the above is refused."

Now, whilst the Code of Criminal Procedure prescribes the cases generally in which arrests may be made without warrants (arts. 209 et seq.), there is a more recent statute which supports the views of the judge. The act of April 12, 1871, entitled "An act to regulate the keeping and bearing of deadly weapons," as copied in 2 Paschal's Digest, art. 6512 et seq., in the first section provides, among other things, that it shall be a misdemeanor for any person to carry about his person, saddle, or in his saddle-bags, any pistol, or other enumerated arms. And by the sixth section, art. 6517, it is declared that "it shall be the duty of all sheriffs, constables," etc., to arrest "any person violating the first or third sections of this act, and to take such person immediately before a justice of the peace of the county," etc. Now, it is true that the act does not in terms authorize an arrest without warrant. We are of opinion, however, from the language employed, that the Legislature did not intend that the officer should delay the

arrest of the offender until a warrant could be procured for his arrest, but that he should arrest the violator without warrant, and take him immediately before a magistrate ; in other words, that the officer could arrest without warrant in such a case.

The court, then, did not err in refusing to give the instructions asked. Whilst it is true that no citizen can be deprived of his liberty or his property except by due course of law, the principle has no application here ; and inasmuch as the officer had a right to arrest, under the proofs in the case, it was but a wise precaution on the part of the officer to seek to disarm the offender. We find no such error in the charge as would warrant a reversal of the judgment.

The fifth error is not well taken ; it was not necessary to aver that King was a peace-officer in order to admit proof of the fact, under the circumstances. Nor is the sixth error well taken. It was not necessary, under the proofs and the charge in the indictment, for the court to charge the law of arrest.

The seventh error is, that the court erred in failing to charge as to the reasonable doubt, except in relation to assault with intent to murder. The court charged on the presumption of innocence, and that the jury were the judges of the credibility of the witness and the weight to be given to the testimony ; and the following : " If they have a reasonable doubt of the guilt of the defendant of an assault with intent to murder, they should acquit him of that offence." They were charged as to the reasonable doubt with reference to the offence of which defendant was convicted, and the defendant cannot complain. Besides, the rule is, that when the court has charged on a given subject, and the counsel deems the charge defective, he should ask additional instructions on the subject.

In the paragraph of the charge on self-defence, the jury were instructed that if the proof showed that state of case, the jury should acquit of any offence.

In the amended motion for a new trial, it is attempted to be shown that there was misconduct on the part of the jury after they had retired to consider of their verdict, supported by one juror and denied by another. The court, on hearing the motion, refused a new trial, doubtless on the idea that the charge against the jury was not sustained; and in this ruling we fully concur. The provision of the Code which authorizes a party to attack a verdict after it has been rendered, by voluntary affidavits of jurors, was never intended to open up for discussion, on a motion for a new trial, the various opinions of the jurors, so that they all concur in a verdict responsive to the charge of the court and supported by the evidence.

The provision is in these words: "When, from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial, it shall be competent to prove such misconduct by the voluntary affidavit of a juror; and the verdict may in like manner be sustained by such affidavit." We are of opinion that the proper application of this provision would be, that when there has been misconduct on the part of the jury, and such misconduct is of a nature to warrant the belief that the trial has not been fair and impartial, and the fact cannot be established from any other source, then it may be proved by the voluntary affidavit of a juror; and when the conduct of the jury is attacked from any other source, and cannot be explained by other testimony, then the conduct of the jury may be vindicated in like manner, — that is, by voluntary affidavit of a juror.

In view of the fact that verdicts are so frequently attacked by affidavits of individual jurors, charging misconduct on some one or more of their fellows, we have given this clause of the Code a more careful scrutiny than ever before, in order to determine what is its proper application. It certainly was never contemplated that, after a trial had been gone through with, and a verdict rendered, the validity of

the verdict should be made to turn upon a new issue made by conflicting statements of different jurors. Such affidavits ought not to be permitted except as a last resort, and then only to procure a fair and impartial verdict. *Austin* v. *The State*, 42 Texas, 355. If the juror is in possession of knowledge of any fact bearing on the case, he should make it known at the proper time, and in the proper manner; and much trouble might be avoided if judges were to call attention to art. 616 of the Code of Criminal Procedure, on this subject.

We have carefully examined the whole case as disclosed by the record, and find no such error as would warrant an interference with the verdict and judgment; and, therefore, the judgment must be affirmed.

*Affirmed.*